Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSS SCHWARZ,<br><br>                Plaintiff,<br><br>    vs.<br><br>PIONEER NATURAL RESOURCES COMPANY, J. KENNETH THOMPSON, A.R. ALAMEDDINE, LORI A. GEORGE, EDISON C. BUCHANAN, RICHARD P. DEALY, MARIA S. JELESCU DREYFUS, MATTHEW GALLAGHER, PHILLIP A. GOBE, STACY P. METHVIN, ROYCE W. MITCHELL, SCOTT D. SHEFFIELD, and PHOEBE A. WOOD,<br><br>                Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Ross Schwarz ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Pioneer Natural Resources Company ("Pioneer" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Exxon Mobil Corporation ("Parent") through merger vehicle SPQR, LLC, a wholly owned subsidiary of Parent, ("Merger Sub," and together with Parent, "Exxon"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-stock merger transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an October 10, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Pioneer's common stock will be converted into the right to receive 2.234 shares of Exxon common stock.  As a result of the Proposed Transaction, Pioneer will become a wholly owned subsidiary of Exxon.

3.      Thereafter, on November 21, 2023, in support of the Proposed Transaction, the Company and Exxon caused to be filed with the SEC a Form S-4 attaching the Registration Statement (the "Registration Statement").

4.      The Proposed Transaction is unfair for a number of reasons.  Notably, the Proposed Transaction does not appear to provide for a collar mechanism to keep the merger consideration value within the realm of reasonableness.

5.      The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote

in favor of the Proposed Transaction, and is thus, in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Pioneer, provided by Pioneer management to the Board and the Board's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs"); (c) the financial projections for Exxon, provided by Exxon management to the Board and the Board's financial advisor; and (d) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinion created by Goldman Sachs and provided to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Texas, and at all times relevant hereto, has been a Pioneer stockholder.

8.      Defendant Pioneer is an independent oil and gas exploration and production company, headquartered in Dallas, Texas, with operations in the United States. Pioneer is incorporated in Delaware and has its principal place of business at 777 Hidden Ridge, Irving, Texas, 75038.  Shares of Pioneer common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "PXD."

9.      Defendant J. Kenneth Thompson ("Thompson") has been a Director of the Company at all relevant times and serves as Chairman of the Company Board.

10.     Defendant A.R. Alameddine ("Alameddine") has been a director of the Company at all relevant times.

11.     Defendant Lori A. George ("George") has been a director of the Company at all relevant times.

12.     Defendant Edison C. Buchanan ("Buchanan") has been a director of the Company at all relevant times.

13.     Defendant Richard P. Dealy ("Dealy") has been a director of the Company at all relevant times and serves as the Company's President and Chief Operating Officer ("COO").

14.     Defendant Maria S. Jelescu Dreyfus ("Dreyfus") has been a director of the Company at all relevant times.

15.     Defendant Matthew Gallagher ("Gallagher") has been a director of the Company at all relevant times.

16.     Defendant Phillip A. Gobe ("Gobe") has been a director of the Company at all relevant times.

17.     Defendant Phillip Stacy P. Methvin ("Methvin") has been a director of the Company at all relevant times.

18.     Defendant Royce W. Mitchell ("Mitchell") has been a director of the Company at all relevant times.

19.     Defendant Scott D. Sheffield ("Sheffield") has been a director of the Company at all relevant times and serves as the Company's Chief Executive Officer ("CEO").

20.     Defendant Phoebe A. Wood ("Wood") has been a director of the Company at all relevant times.

21.     Defendants identified in ¶¶ 9 - 20 are collectively referred to as the "Individual Defendants."

22.     Non-Party Parent Exxon Mobile Corporation engages in the exploration and production of crude oil and natural gas in the United States and internationally.  It operates through Upstream, Energy Products, Chemical Products, and Specialty Products segments.

23.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

27.     Defendant Pioneer operates as an independent oil and gas exploration and production company that explores for, develops, and produces oil, natural gas liquids and gas in the Permian Basin in West Texas.

28.     The Company's recent second quarter 2023 performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the report of the second quarter 2023 financial results dated August 1, 2023, the Company highlighted such milestones as: Second Quarter 2023 net income attributable to common stockholders of $1.1 billion, or $4.55 per diluted share, and adjusted income for the second quarter was $1.1 billion, or $4.49 per diluted share; the Company ended the second quarter with net debt of $5.2 billion as of June 30, 2023, had $1.9 billion of liquidity, comprised of $91 million of cash on hand and $1.8 billion available under a $2.0 billion unsecured credit facility, as of June 30, 2023.

29.     Speaking on these positive results, Defendant, President, and COO Dealy commented on the Company's positive results as follows, "Pioneer's strong execution delivered excellent second quarter results, with oil production near the top end of our guidance range." Dealy furthered this sentiment by stating, "Additionally, our solid operational results generated significant free cash flow during the second quarter, supporting compelling shareholder returns."

30.     Dealy continued, saying "Continued strong well productivity and highly efficient operations underpin our ability to increase full-year production guidance, while lowering full-year capital guidance through a purposeful reduction in activity. Our improved 2023 outlook is expected to deliver an even more capitally efficient program. Pioneer's greatest competitive

advantages remain our deep inventory of high-return wells paired with our highly efficient operations and our dedicated employees. We expect this combination to generate strong corporate returns and significant free cash flow for decades, providing long-term value for shareholders."

31.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Pioneer.

32.     Despite this upward trajectory, the Individual Defendants have caused Pioneer to enter into the Proposed Transaction without providing requisite information to Pioneer stockholders such as Plaintiff.

***The Flawed Sales Process***

33.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

34.     Notably, the Registration Statement fails to indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness.

35.     The Registration Statement also fails to disclose whether a committee of disinterested directors was formed to review the Proposed Transaction and if so, the identity of the directors who sat on said committee and what powers the committee had to evaluate the transaction, including whether the committee was empowered to veto a potential transaction not in the best interests of shareholders. On the other hand, if a committee was not formed, the Registration Statement fails to adequately disclose why a committee of disinterested directors was not formed. Specifically, the Registration Statement indicates that Defendant Sheffield and at least one other board member will be appointed to Exxon's board post effective time of the Merger, and

therefore, a special committee should have been created as an insulating precaution against any undue influence by such Directors who may have had divergent interest from the Company.

36.     Finally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Exxon, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

37.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

38.     On October 11, 2023, Pioneer and Exxon issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> SPRING, Texas & IRVING, Texas -- (BUSINESS WIRE) -- Exxon Mobil Corporation (NYSE: XOM) and Pioneer Natural Resources (NYSE: PXD) jointly announced a definitive agreement for ExxonMobil to acquire Pioneer. The merger is an all-stock transaction valued at $59.5 billion, or $253 per share, based on ExxonMobil's closing price on October 5, 2023. Under the terms of the agreement, Pioneer shareholders will receive 2.3234 shares of ExxonMobil for each Pioneer share at closing. The implied total enterprise value of the transaction, including net debt, is approximately $64.5 billion.

> This press release features multimedia. View the full release here: https://www.businesswire.com/news/home/20231011046108/en/

> The merger combines Pioneer's more than 850,000 net acres in the Midland Basin with ExxonMobil's 570,000 net acres in the Delaware and Midland Basins, creating the industry's leading high-quality undeveloped U.S. unconventional inventory position. Together, the companies will have an estimated 16 billion barrels of oil equivalent resource in the Permian. At close, ExxonMobil's Permian production volume would more than double to 1.3 million barrels of oil equivalent per day (MOEBD), based on 2023 volumes, and is expected to increase to approximately 2 MOEBD in 2027. ExxonMobil believes the transaction represents

an opportunity for even greater U.S. energy security by bringing the best technologies, operational excellence and financial capability to an important source of domestic supply, benefitting the American economy and its consumers.

"Pioneer is a clear leader in the Permian with a unique asset base and people with deep industry knowledge. The combined capabilities of our two companies will provide long-term value creation well in excess of what either company is capable of doing on a standalone basis," said ExxonMobil Chairman and CEO Darren Woods. "Their tier-one acreage is highly contiguous, allowing for greater opportunities to deploy our technologies, delivering operating and capital efficiency as well as significantly increasing production. As importantly, as we look to combine our companies, we bring together environmental best-practices that will lower our environmental footprint and plan to accelerate Pioneer's net-zero plan from 2050 to 2035."

Pioneer Chief Executive Officer Scott Sheffield commented, "The combination of ExxonMobil and Pioneer creates a diversified energy company with the largest footprint of high-return wells in the Permian Basin. As part of a global enterprise, Pioneer, our shareholders and our employees will be better positioned for long-term success through a size and scale that spans the globe and offers diversity through product and exposure to the full energy value chain. The consolidated company will maintain its leadership position, driving further efficiencies through the combination of our adjacent, contiguous acreage in the Midland Basin and our highly talented employee base, with the improved ability to deliver durable returns, creating tangible value for shareholders for decades to come."

**Transaction Benefits**

Combining Pioneer's differentiated Permian inventory and basin knowledge with ExxonMobil's proprietary technologies, financial resources, and industry-leading project development is expected to generate double-digit returns by recovering more resource, more efficiently and with a lower environmental impact.

The transaction is a unique opportunity to deliver leading capital efficiency and cost performance as well as increase production by combining Pioneer's large-scale, contiguous, high-quality undeveloped Midland acreage with ExxonMobil's demonstrated industry-leading Permian resource development approach.

The unique, complementary fit of Pioneer's contiguous acreage will allow ExxonMobil to drill long, best-in-class laterals -- up to four miles -- which will result in fewer wells and a smaller surface footprint. The company also expects to enhance field digitalization and automation that will optimize production throughput and cost.

The combination transforms ExxonMobil's upstream portfolio by increasing lower-cost-of-supply production, as well as short-cycle capital

flexibility. The company expects a cost of supply of less than $35 per barrel from Pioneer's assets. By 2027, short-cycle barrels will comprise more than 40% of the total upstream volumes, positioning the company to more quickly respond to demand changes and increase capture of price and volume upside.

The transaction's unique value creation opportunity results in significant synergies and further upside potential that will be shared by both companies' shareholders. The merger is anticipated to be accretive immediately and highly accretive mid- to long-term to ExxonMobil earnings per share and free cash flow, with a long cash flow runway. ExxonMobil's strong balance sheet combined with Pioneer's added surplus free cash flow provides upside opportunity to enhance shareholder capital returns post-closing.

Finally, this merger represents the opportunity for even greater U.S. energy security by bringing the best technology, operational excellence, environmental best practices and financial capability to an important source of domestic supply, benefitting the American economy and its consumers.

### Accelerating to Net Zero in the Permian

ExxonMobil has industry-leading plans to achieve net zero Scope 1 and Scope 2 greenhouse gas emissions from its Permian unconventional operations by 2030. As part of the transaction, ExxonMobil intends to leverage its Permian greenhouse gas reduction plans to accelerate Pioneer's net zero emissions plan by 15 years, to 2035.

ExxonMobil will leverage the same aggressive strategy and apply its industry-leading new technologies for monitoring, measuring, and addressing fugitive methane to lower both companies' methane emissions.

In addition, using combined operating capabilities and infrastructure, we expect to increase the amount of recycled water used in our Permian fracturing operations to more than 90% by 2030.

### Transaction Details

The per-share merger consideration noted above represents an approximate 18% premium to Pioneer's undisturbed closing price on October 5 and a 9% premium to its prior 30-day volume-weighted average price on the same day.

The Boards of Directors of both companies have unanimously approved the transaction, which is subject to customary regulatory reviews and approvals. It is also subject to approval by Pioneer shareholders. The transaction is expected to close in the first half of 2024.

***Potential Conflicts of Interest***

39.     The breakdown of the benefits of the deal indicates that Pioneer insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Pioneer.

40.     The Registration Statement fails to provide a breakdown of the shares of Company Common Stock held by its Directors and Executives. Furthermore, the Registration Statement is equally silent as to the breakdown of the consideration each of the above-mentioned Directors and Executives members will receive pursuant to the Proposed Transaction.

41.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

| Executive Officer Name | Number of Pioneer RSUs |
|---|---|
| Scott D. Sheffield | 20,885 |
| Richard P. Dealy | 16,686 |
| Mark S. Berg | 10,176 |
| J.D. Hall | 7,928 |
| Mark H. Kleinman | 9,576 |
| Elizabeth A. McDonald | 4,756 |
| Neal H. Shah | 9,650 |
| Tyson L. Taylor | 4,330 |
| Bonnie S. Black | 3,589 |
| Christopher L. Washburn | 2,267 |

| Executive Officer Name | Number of Shares of Pioneer Restricted Stock |
|---|---|
| Richard P. Dealy | 3,715 |
| J.D. Hall | 2,486 |

| Executive Officer Name | Number of Pioneer Performance Units (at Maximum) | Accrued Dividend Equivalents on Performance Units (at Maximum) | |
|---|---|---|---|
| Scott D. Sheffield | 375,201 | $ | 12,753,671 |
| Richard P. Dealy | 110,898 | $ | 3,554,782 |
| Mark S. Berg | 65,478 | $ | 2,155,553 |
| J.D. Hall | 65,478 | $ | 2,155,553 |
| Mark H. Kleinman | 50,853 | $ | 1,627,678 |
| Elizabeth A. McDonald | 23,631 | $ | 747,046 |
| Neal H. Shah | 56,751 | $ | 1,791,368 |
| Tyson L. Taylor | 21,895 | $ | 681,689 |
| Bonnie S. Black | 18,526 | $ | 594,395 |
| Christopher L. Washburn | 1,153 | $ | 12,406 |

| Director Name | Number of Unvested Pioneer RSUs | Number of Pioneer DSUs |
|---|---|---|
| A.R. Alameddine | 1,219 | 3,299 |
| Lori A. George | 1,099 | 3,190 |
| Edison C. Buchanan | 785 | 22,857 |
| Maria S. Dreyfus | 1,119 | — |
| Matthew M. Gallagher | 1,219 | 4,451 |
| Phillip A. Gobe | 855 | 2,748 |
| Stacy P. Methvin | 855 | 2,750 |
| Royce W. Mitchell | 855 | 2,233 |
| J. Kenneth Thompson | 1,134 | — |
| Phoebe A. Wood | 855 | 10,510 |

42.     Moreover, certain employment agreements with certain Pioneer executives entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)(1) | | Equity ($)(2) | | Pension/ NQDC ($)(3) | | Perquisites/ Benefits ($)(4) | | Total ($) | |
|---|---|---|---|---|---|---|---|---|---|---|
| Scott D. Sheffield | $ | 13,771,685 | $ | 111,339,477 | $ | — | $ | 710,786 | $ | 125,821,948 |
| Richard P. Dealy | $ | 5,414,320 | $ | 36,235,103 | $ | — | $ | 680,307 | $ | 42,329,730 |
| Neal H. Shah | $ | 3,861,607 | $ | 18,318,577 | $ | — | $ | 860,628 | $ | 23,040,812 |
| Mark S. Berg | $ | 3,593,082 | $ | 20,985,833 | $ | — | $ | 428,786 | $ | 25,007,701 |
| J.D. Hall | $ | 3,593,082 | $ | 21,045,071 | $ | — | $ | 654,446 | $ | 25,292,599 |

43.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment, if any, which took place during the negotiation of the

underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44. Thus, while the Proposed Transaction is not in the best interests of Pioneer, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

45. On November 21, 2023, the Pioneer Board and Exxon caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

<u>*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*</u>

46. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

      a. Adequate information as to whether a committee of disinterested directors was formed to evaluate the Proposed Transaction. If so, the identity of the directors who sat on the committee and what powers the committee had. If not, the reasoning for failing to create such a committee;

b. Adequate information as to why the Board agreed to a Proposed Transaction that did not contain a collar mechanism;

c. Whether the confidentiality agreements entered into by the Company with Exxon differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

d. All specific conditions under which any standstill provision contained in any confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Exxon, would fall away; and

e. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

*Omissions and/or Material Misrepresentations Concerning Pioneer and Exxon Financial Projections*

47. The Registration Statement also fails to provide material information concerning financial projections for Pioneer provided by Pioneer management to the Board and Goldman Sachs and relied upon by Goldman Sachs in their analyses.

48. Notably, the Registration Statement reveals that, as part of its analyses, Goldman Sachs reviewed, among other things: "Certain internal financial analyses and forecasts for Pioneer prepared by its management, as approved by Goldman Sachs' used by Pioneer."

49. The Registration Statement should have, but fails to provide, certain information in the projections that Pioneer management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by

investors.  Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

50.     With regard to *Certain Pioneer Unaudited Prospective Financial Information,* prepared by Pioneer, the Registration Statement fails to disclose material line items, including the following:

> a.   The underlying inputs, metrics, and assumptions used to determine EBITDAX, including specifically: earnings before interest expense, income taxes, depreciation, depletion, amortization, and exploration expense, non-cash fair value gains (losses) on derivatives, accretion of discount on asset retirement obligations, and interest and other income;

> b.   The underlying inputs, metrics, and assumptions used to determine Capital Expenditures, including specifically: additions to oil and gas productions, and other property additions; and

> c.   The underlying inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow, including specifically: adjusted EBITDAX less unlevered taxes, plus or minus changes in unlevered working capital, and less capital expenditures.

51.     The Registration Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

52.     The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

53.     The Registration Statement also fails to provide **any** information concerning financial projections for Exxon provided by Exxon management to the Pioneer Board and Goldman Sachs to be relied upon by Goldman Sachs in its analyses., Failure to provide such projection information prevents Plaintiff from being fully informed as to the value of the merger consideration.

54.     Specifically, the Registration Statement's failure to disclose substantive material projection data prevents Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing him from making a fully informed decision on whether to vote in favor of the same.

55.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

56.     Without complete and accurate projection data for Pioneer or Exxon being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of Goldman Sach's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

57.     In the Registration Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to

include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

58.    With respect to the *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

a.    The inputs, metrics, and assumptions used to determine the discount rates ranging from 9.5% to 10.5% utilized;

b.    Pioneer's weighted average cost of capital utilized;

c.    The inputs, metrics, and assumptions used to estimate unlevered free cash flow for the period from October 1, 2023 to December 31, 2027;

d.    The inputs, metrics, and assumptions used to determine the EBITDAX multiples range of 5.0x to 6.5x utilized; and

e.    The inputs, metrics, and assumptions used to determine the utilized perpetuity growth rates ranging from 1.3% to 4.0%;

f.    The inputs, metrics, and assumptions used to determine the discount rates by application of the Capital Asset Pricing Model ("CAPM"), more specifically:

    i.    Pioneer's target capital structure weightings;

    ii.    The cost of long-term debt;

    iii.    After-tax yield on permanent excess cash, if any;

    iv.    Future applicable marginal cash tax rate and a beta for Pioneer;

    v.    Certain financial metrics for the United States financial markets generally.

g.    Pioneer's net debt, and all underlying inputs used to determine the same; and

h.   The number of fully diluted shares of Pioneer common stock outstanding.

59.   With respect to the *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose:

a.   The inputs, metrics, and assumptions used to determine the EV/NTM EBITDAX multiples of 5.0x to 6.5x which were applied to estimates of Pioneer's NTM Adjusted EBITDAX for the calendar years of 2024 through 2026;

b.   The specific inputs, metrics, and assumptions pertaining to Pioneer's total debt, less cash, cash equivalents, and investments in affiliates for each of the calendar years 2024 through 2026;

c.   The specific metrics for the projected year-end number of fully diluted outstanding shares of Pioneer common stock for each of the calendar years 2024 through 2026;

d.   The specific inputs, metrics, and assumptions used to derive the discount rate of 10.5% utilized;

e.   Pioneer's estimated cost of equity utilized; and

f.   The inputs, metrics, and assumptions used to determine the discount rates by application of the CAPM.

60.   With respect to the *Selected Precedent Transactions Premia Analysis*, the Registration Statement fails to disclose:

a.   The specific date on which each transaction closed;

b.   The aggregate value of each selected precedent transaction; and

     c.   The specific inputs, metrics, and assumptions used to derive the applied reference range of illustrative premia of (2.9)% to 14.8%.

61.    With respect to the *Selected Publicly Traded Companies Trading Multiples*, the Registration Statement fails to disclose:

     a.   The specific metrics observed for each comparable company;

     b.   The utilized metric reference ranges and the specific inputs, metrics, and assumptions used to determine the same;

62.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

63.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Pioneer stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**<u>(Against All Defendants)</u>**

64.    Plaintiff repeats all previous allegations as if set forth in full herein.

65.    Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

66.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

67.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

68.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

69.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

70.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

71.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

72.     Plaintiff repeats all previous allegations as if set forth in full herein.

73.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

74.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

75.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Pioneer's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

76.     The Individual Defendants acted as controlling persons of Pioneer within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Pioneer to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Pioneer and all of its employees.  As alleged above, Pioneer is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained

therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 15, 2023                                 **BRODSKY & SMITH**

By: *Evan J. Smith*
                                                         Evan J. Smith
                                                         240 Mineola Boulevard
                                                         Mineola, NY  11501
                                                         Phone:  (516) 741-4977
                                                         Facsimile (561) 741-0626

                                                         *Counsel for Plaintiff*